UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

    Maxx Towing, Inc.                                  Case No. 09-70719
                                                                Chapter 11
                 Debtor.                                 Hon. Walter Shapero

_____/

**OPINION REGARDING VALUE OF REAL PROPERTY AND SUSTAINING
CREDITOR'S VALUATION OBJECTION TO CONFIRMATION OF DEBTOR'S PLAN**

      The matter before the Court is Bayview Loan Servicing, LLC's Amended Objection to Confirmation of Debtor's Plan. At the hearing held on January 12, 2011, the Trustee brought to the Court's attention the fact that it was impossible for the Debtor to comply with 11 U.S.C. § 1129(e), which requires the court to confirm a plan not later than 45 days after a plan is filed in a small business case, unless the time for confirmation is extended. Although the Court initially indicated that it would rule on that issue prior to ruling on the valuation issue, the Court has on second thought decided it would be more helpful to the confirmation process if it first decides the valuation issue.

**BACKGROUND AND FACTS**

      Maxx Towing, Inc. ("Debtor"), a small business debtor, filed its Chapter 11 bankruptcy petition on October 2, 2009. Bayview Loan Servicing, LLC ("Creditor"), the holder of the mortgage on Debtor's business property located at 30875 Groesbeck, Roseville, Michigan, filed a claim in the amount of $530,308.45. Debtor's Schedule A lists the current value of the Property as being $200,000.

      Debtor filed its Amended Combined Plan and Disclosure Statement on May 9, 2010 (Docket No. 55). Debtor's proposed Plan seeks to cram down Creditor's claim. Debtor proposes that it pay Creditor $200,000 (the alleged secured portion of Creditor's claim) with 6% interest, amortized over 30 years, with the remainder of the claim to be paid as an unsecured claim. On June 9, 2010, Creditor filed its Amended Objection to Confirmation of Debtor's Plan (Docket No. 66), which objects, in part, to Debtor's valuation of the Property at $200,000. After several

1

stipulated to adjournments, the Court held an evidentiary hearing, at which it took evidence regarding the value of the Property from two appraisers.

The Property at issue is currently used as an automotive repair facility and towing business. The structure(s) housing the business sit perpendicular to, and the Property has 150 feet of frontage on, Groesbeck Highway, which is a very high traffic roadway. The building is painted in a checkerboard pattern with a large visible sign abutting the highway.

Debtor's witness, Terrence Abraham, is a certified general appraiser who has worked as a real estate appraiser and broker for some 40 years. He has a background as a real estate agent, specifically working with commercial buildings. He testified that, in preparing his report, he implemented the typical appraisal process, i.e.: he personally inspected the Property and researched comparable properties. He testified that the Property was in good repair and that the highest and best use for the Property as it is currently set up is as an automotive repair facility, but further testified that the Property could also be used for light industrial or commercial purposes. He applied the direct sales comparison approach, which derives value by comparing the property being appraised to similar properties that have been sold recently, applying appropriate units of comparison, and making adjustments to the sales prices of the comparables based on the elements of comparison. Mr. Abraham's report included 14 commercial properties in Macomb County and Oakland County as comarparables, most of which sold in 2010 and 2009. He ultimately valued the Property at $203,000. Mr. Abraham testified that, given the depressed real estate market in Michigan, the Property would most likely be on the market for more than 12 months and that real estate values should be treated very conservatively due to current market trends. He specifically focused on the orientation of the Property to the road, noting that since the Property is perpendicular to the roadway, as opposed to being parallel and thus having more frontage or being located on a corner lot, it is less visible and thus less desirable as a retail location. He made very few adjustments for age, size, location, and quality of the buildings in the Sales Adjustment Grid in his report. He testified that, since adjustments are subjective and can vary, he believes the better approach is to minimize adjustments and attempt to use more comparable properties to get a more accurate idea of what those general types of properties are valued at.

The Creditor's witness, David Bur, testified that he is a commercial real estate appraiser and he has worked in that position for some 20 years, appraising some 50 automotive repair

2

facilities in that time. In preparing his report, he inspected the Property and researched and visited comparable properties. He testified that the Property was in average condition and that its highest and best use is, in the Property's current state, an automotive repair facility, and, if vacant, a future industrial development. He included what he thought to be the best six comparables in his report, all of which were used as automotive repair facilities and were recent sales in similar locations to the Property. Mr. Burr applied (1) the sales comparison approach, which compares the subject property to similar properties in the same or similar markets that sold or are under contract, and (2) the income approach, which considers the present value of the future benefits of property ownership. He concluded that the market value of the Property, achievable within 12 months on the market, is $290,000 and that the "disposition value" is $217,500, that figure apparently being what it might fetch for a quicker sale with less than 12 months of market exposure. Mr. Bur testified that the real estate market had improved slightly in 2010, but acknowledged that property values have been declining. He recognized that the Property's location and frontage is less desirable in terms of visibility and accounted for such by making a negative 10% location adjustment to certain comparables in his Sales Adjustment Grid. He made further adjustments to the comparables for the following factors: time/market conditions, location, size, age/condition, and land-to-building ratio. He testified that, while adjustments are based on subjective things, each of those adjustments and his valuation opinion were based on appropriate market data.

## **DISCUSSION**

In this case, the two appraisers took somewhat different approaches when determining the value of the Property. Specifically, (1) the two appraisers considered different types of properties as comparables – Mr. Abraham considered 14 separate commercial properties (none of which were utilized as automotive repair facilities), while Mr. Bur considered 6 separate properties used as automotive repair facilities; and (2) the two appraisers took different approaches with regard to making adjustments – Mr. Abraham chose to make very few adjustments to the comparable properties, while Mr. Bur made several adjustments to the comparable properties to account for differences.

While Debtor's appraiser is well-credentialed and has more years of experience overall, the Court finds Creditor's appraisal and valuation evidence to be somewhat more credible. Both appraisers testified that the highest and best use for this Property is an automotive repair facility,

yet, despite that fact, Debtor's appraiser chose to use light industrial/commercial use properties as comparables instead of using strictly automotive repair facilities. The Court finds Creditor's appraiser's comparables to be much more comparable to the Property at issue, and thus more instructive as to value. Further, Debtor's appraiser made very few adjustments in his Sales Adjustment Grid, despite the fact that the comparables were quite different from the Property at issue in terms of size, location, and age/condition. While Debtor's appraiser testified that he purposefully chose not to make more adjustments, instead choosing to consider additional comparables to come to his opinion regarding value, the Court finds Creditor's appraiser's method to be somewhat more credible since it readily accounts for apparent differences between the Property and the comparable properties. While the Court finds Creditor's appraisal and appraisal method to be generally more credible and weighty, the Court also concludes its $290,000 value to be somewhat high, especially considering: (a) the current weak condition of the commercial real estate market in Michigan, (b) the Property has such a limited use in its current form and would need significant changes in order to be used for some purpose other than an automotive repair facility, and (c) some allowance needs to be made for the real possibility that there might be an excess of automotive repair properties on the market at the present time.

       Therefore, the Court finds the value of the Property to be $255,000. Thus, Creditor's Objection to Confirmation of Debtor's Plan is sustained by reason of the value provided for therein. A status conference to discuss the effect of this decision on the confirmability of the Debtor's plan will be held on April 21, 2011 at 11:00 a.m., absent a prior filing of an amended plan or other definitive action. At that time, the Court will discuss the need for, or timing of, a decision on the 11 U.S.C. § 1129(e) issue.

.

```
Signed on March 28, 2011
            /s/ Walter Shapero
      Walter Shapero
      United States Bankruptcy Judge
```